UNITED STATES of America,
Appellant,

v.

ASSOCIATED AIR TRANSPORT, INC.,
et al., Appellees.

No. 17203.

United States Court of Appeals
Fifth Circuit

June 30, 1958.

Rehearing Denied Aug. 6, 1958.

858

Robert S. Green, Samuel D. Slade, Attys., Dept. of Justice, Washington, D. C., James L. Guilmartin, U. S. Atty., Miami, Fla., George Cochran Doub, Asst. Atty. Gen., for appellant.

Joseph A. Perkins, J. P. Marchant, Miami, Fla., Robert M. Beckman, William C. Burt, Washington, D. C., for appellees.

Before HUTCHESON, Chief Judge, and JONES and WISDOM, Circuit Judges.

HUTCHESON, Chief Judge.

This is an appeal by the United States from an interlocutory order declaring that appellees are not required to make any further payments by offset or otherwise to the United States in connection with any of the matters involved in this suit, and that the defendant, United States, through its servants and agents, is hereby directed to cease and desist from issuing any orders or directions which have the effect of withholding from the plaintiff and intervenors, as a set-off against claims of overpayment in the performance of CAMS [Military Personnel] and CAFMS [Military Freight] movements for the defendant prior to the filing of this suit, any sums of money due from the defendant to the plaintiffs and intervenors since the filing of this suit.

The single question involved in this appeal is whether, in issuing this interlocutory injunction and declaratory judgment against the United States, the district judge exceeded his jurisdiction or otherwise erred under the undisputed facts of record. As pertinent, these are:

Appellees are non-certificated air carriers who transport military personnel and freight under contracts with the United States.

On March 22, 1956, appellee Associated Air Transport, Inc. instituted this action in the United States District Court for the Southern District of Florida on behalf of itself and other carriers similarly situated, seeking to determine the rights of the parties to such contracts and specifically to recover payment from the United States of $16,026.50 for ferry mileage allegedly flown by Associated during 1954, but for which it was not compensated under its contracts.

The complaint stated that the action was brought under the Tucker Act, 28 U.S.C. § 1346 and the Declaratory Judgment Act, 28 U.S.C. § 2201, and that the amount in controversy in any one contract did not exceed $10,000.00.

It alleged that the General Accounting Office had refused to pay these amounts, and instead, after auditing the accounts of Associated and other carriers, had demanded repayment of alleged overpayments made by the United States under these contracts. The complaint therefore requested, inter alia, a money judgment for the amounts allegedly due Associated on these contracts, a declaratory judgment of the rights and obligations of the parties under such charter contract, and an order enjoining the United States from requiring further return of monies under the contracts and from withholding payments on current contracts on the basis of the alleged overpayments on the contracts involved in this case.

The complaint was amended on July 13, 1956, to include a demand for monies allegedly due to Associated under contracts for both military freight and military personnel, not only for the year 1954, but also for carriage prior and subsequent thereto.

The Government's answer put Associated's claims in issue, and, subsequently, its amended answer asserted counterclaims against Associated for overpayments on contracts of carriage in the total amount of $35,654.96, plus $6,885.69 for gasoline and oil which Associated had purchased from the Air Force.

A number of additional carriers subsequently intervened as parties plaintiff, seeking relief similar to that demanded by Associated. By stipulation the United States will not be required to answer the claims of the intervenors or file its counterclaims against them until after the final disposition of the controversy between Associated and the United States. The latter cause is presently pending before a commissioner appointed by the district court.

Although the carriers were initially unsuccessful in their attempt to enjoin collection by the United States of their overpayments, they had been successful in obtaining informal agreements with the Comptroller General of the United States whereby the carriers would make monthly payments to him in partial liquidation of the Government's claims, and in consideration thereof, the Comptroller General would refrain from exercising his statutory right to collect these claims from amounts presently due the carriers under existing contracts.[1]

On Oct. 29, 1957, while hearings on the respective liability of the parties were still in progress, appellees, as the government claims, because of their violation by the General Accounting Office, applied for and, on [2]

1. The authority claimed by the Comptroller General to make such collections is set out in 31 U.S.C.A. § 71 and 49 U.S.C.A. § 66, and is discussed in United States v. New York, New Haven & Hartford R. Co., 355 U.S. 253, 78 S.Ct. 212, 2 L.Ed.2d 247.

2. This order was entered Dec. 12, 1957, and was amended on Dec. 20, 1957, "so

Dec. 12, 1957, obtained from the district judge the order from which this appeal comes.

Insisting that the effect of the order appealed from is by injunction against the United States to deprive it of the time honored right of a creditor to set off against a debtor's obligation any funds of the debtor which he may hold, and, urging upon us that, as early as Gratiot v. United States, 15 Pet. 336, 369, 10 L.Ed. 759, the Supreme Court recognized that the United States possessed "the common right which belongs to every creditor to apply the unappropriated moneys of his debtor in his hands in extinguishment of the debts due him," the United States points out: that this right of set off has been expressly recognized by statute and that Section 66 of 49 U.S.C.A., in requiring that payment for transportation of persons or property on behalf of the United States by common carriers, "be made upon presentation of bills therefor, prior to audit or settlement by the General Accounting Office", expressly reserves to the United States the right "to deduct the amount of any overpayment to any such carrier from any amount subsequently found to be due such carrier."

Calling our attention to the fact that the Supreme Court has declared that this right [to deduct overpayment from subsequent bills of the carrier] was thought to be a necessary measure to protect the government since carrier bills must be paid on presentation and before audit,[3] it urges upon us that the district court by the order appealed from has attempted to prevent the United States from exercising this undoubted right of set-off.

Insisting, however, that, without reaching the merits of this decision and order it must be reversed as wholly beyond the court's jurisdiction, since no court may enjoin the United States as such and the Comptroller General is not a party to this action and besides is subject to suit only in the District of Columbia, his official residence, appellant, quoting from United States v. Patterson, 5 Cir., 206 F.2d 345, 348;

"It is a fundamental principle that the United States cannot be sued without its consent." and equally "beyond dispute that unless expressly permitted by an Act of Congress, no injunction can be granted against the United States."

cites in further support Belknap v. Schild, 161 U.S. 10, 17, 16 S.Ct. 443, 40 L.Ed. 599; United States v. Jones, 131 U.S. 1, 18–19, 9 S.Ct. 669, 33 L.Ed. 90; McAvoy v. United States, 2 Cir., 178 F.2d 353, 356; Lynn v. United States, 5 Cir., 110 F.2d 586, 588–589; and Larson v. Domestic & Foreign Corp., 337 U.S. 682, 703, 69 S.Ct. 1457, 93 L.Ed. 1628.

As to the declaratory judgment feature of the order, appellant points out that the declaratory judgment statute does not confer or enlarge jurisdiction over the United States,[4] and that in addition it is wholly inappropriate to make such a determination without a hearing.[5]

The appellees, on their part, insisting *in limine* that the appeal was not timely filed and that this court is without jurisdiction to hear it, move to dismiss it.

In the alternative, appellees present under several variations a proposition of law of their own devising: "The district

---

as to require that before the said order may be considered effective", the plaintiffs and intervenors be required to post bonds. Beginning on Jan. 28, and in the 30 day period following, Associated and the other intervenors except Trans-Ocean Airlines, which advised that it did not intend to post bond, posted bonds.

3. See United States v. New York, New Haven & Hartford, 355 U.S. 253, 257, 78 S.Ct. 212, 2 L.Ed.2d 247. Cf. United

States v. Missouri Pacific, 5 Cir., 250 F.2d 805.

4. Skelly Oil Co. v. Phillips, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194; Doehler Metal Furniture Co. v. Warren, 76 U.S. App.D.C. 60, 129 F.2d 43; Cadillac v. Summerfield, 97 U.S.App.D.C. 14, 227 F.2d 29, 30.

5. City of Miami v. Sutton, 5 Cir., 181 F.2d 644; Miami Beach Federal Savings & Loan v. Callander, 5 Cir., 256 F.2d 410 and cases cited therein.

court had jurisdiction to enter an injunction Pendente Lite, enjoining the government from collecting a claim which was Sub Judice until final adjudication of the controversy."

In support of this theme, appellees, admitting: "As appellant points out in its brief, the United States possessed 'the common right which belongs to every creditor to apply the upnappropriated moneys of his debtor in his hands in extinguishment of the debts due to him.'"; and that this common law right of set-off was codified in Sec. 322 of the Transportation Act; argue that this right "ceases once those claims become sub judice."

Quoting from what they call "the leading case of" the United States v. Kirkpatrick, 1824, 9 Wheat. 720, 22 U.S. 720, 6 L.Ed. 199:

"It is certainly too late for either party to claim a right to make an appropriation after the controversy has arisen, and a fortiori at the time of the trial."

they profess, though the case did not deal with an injunction or with a situation in any way comparable to that presented here, to see in this case and this quotation full authority for their position that "appellant no longer has the right to exercise the self-help authorized in Sec. 322."

In short, appellees, admitting: "that had appellant not brought its claims into court, appellant would have had the right to unilaterally determine that overpayments had been made and to collect those overpayments from other amounts due the carriers", go on to say:

"But appellant did not use this procedure. Of its own free choice, it forsook this course and brought its claims into court. Having made the choice and having participated in

hearings which have lasted almost two years and are not yet completed, it cannot now override the court's jurisdiction and unilaterally collect claims it, and not the court, decides are due it."

For the reasons hereafter briefly stated, we are of the clear opinion: that the appeal was timely; that appellant is right throughout; and that the judgment appealed from must be reversed.

■ Of the motion to dismiss the appeal, it is sufficient to say that we agree fully with appellant's position in its reply brief that "There is no substance to appellees' argument that appellant's notice of appeal is not timely filed * * * the District Court's order of Dec. 20, 1957, expressly stated that *before* its injunction order dated Dec. 12, 1957, 'may be considered effective * * * [the carriers] be required to post, pursuant to Rule 65(c) Federal Rules of Civil Procedure [28 U.S.C.], surety bonds * * *'" fixing as to each carrier the bond it should post; that the first bonds were filed Jan. 28, 1958, the others later; and that when in March the appeal was filed, it was timely as to each carrier.

■ We agree with it, too, that until the bonds were filed, the order by its own terms was conditional and without operative effect, that there was, in short, no order to appeal from. Indeed, an earlier appeal would have been premature, for it is well settled that "no appeal lies from an order or decree which is conditional only and the finality of which depends upon certain contingencies which may or may not occur, such as an order granting relief upon the party's performing certain specified acts or complying with specified conditions." Cyclopedia of Federal Procedure, 3rd ed. (1952) Vol. 13, Sec. 57.59.[6]

6. See e. g., Stratton v. Dewey, 5 Cir., 79 F. 32; Jones' Adm'r v. Craig, 127 U.S. 213, 8 S.Ct. 1175, 32 L.Ed. 147; City of Paducah, Ky., v. East Tenn. Tel. Co., 229 U.S. 476, 33 S.Ct. 816, 57 L.Ed. 1286; Hengesbach v. Hengesbach, 76 U.

S.App.D.C. 209, 130 F.2d 838; Western Electric Co. v. Pacent Reproducer Corp., 2 Cir., 37 F.2d 14, certiorari denied, 282 U.S. 873, 51 S.Ct. 78, 75 L.Ed. 771; Cf. DeFilippis v. Chrysler Sales Corp., 2 Cir., 116 F.2d 375; Brownson v. United

Upon the merits of the appeal, we think it clear that the appellees, and the district judge to the extent that he relied upon it, have misread and misapplied in this case the teachings of United States v. Kirpatrick, supra. That case did not deal in any way with a situation like this. It could not have done so. At the time that case was written, there was no statute like the one under which the Comptroller General is proceeding. In addition, the case dealt solely with the question of the respective rights of creditors and debtor to direct the appropriation of payments, that is, where there are several debts, to which debt a payment will be applied. Cf. Mc-Graw & Co. v. Milcor Steel Co., 2 Cir., 149 F.2d 301, 309, and Gratiot v. United States, supra. The gist of the holding in the Kirkpatrick case appears on the last page:

"The general doctrine is, that the debtor has a right, if he pleases, to make the appropriation of payments; if he omits it, the creditor may make it; if both omit it, the law will apply the payments, according to its own notions of justice." (9 Wheat. at page 737).

It was in this connection that the language on which appellees rely was used:

"It is certainly too late for either party to claim a right to make an appropriation after the controversy has arisen, and a fortiori, at the time of the trial." (Id. 9 Wheat. at page 737.)

It was not intended to, it does not stand for the principle devised by appellee.

Further, we agree with the position of appellant that nothing in appellees' argument in any way effectively counters appellant's position, and that upon the au-

thorities cited by it in support, it is quite clear that the district court erred in entering the order appealed from.

It is well settled by the cases [7] that the United States does not waive its immunity from the imposition upon it of an injunction or other unauthorized remedy by coming into court with a claim or counter-claim. We think it equally clear that, if the invoked jurisdiction existed, it was wrongly exercised.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

---

States, 8 Cir., 32 F.2d 844, 845; Mercantile Trust Co. of New York v. Chicago, P. & St. L. Ry., 7 Cir., 123 F. 389.

7. United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; United States v. United States Fid. & Cas. Co., 309 U. S. 506, 60 S.Ct. 653, 84 L.Ed. 894; In re Greenstreet, Inc., 7 Cir., 209 F.2d

660; State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235; Munro v. United States, 303 U.S. 36, 58 S.Ct. 42, 82 L.Ed. 633; In re Patterson-MacDonald Shipbuilding Co., 9 Cir., 293 F. 192; United States v. Merchants Trans. & Storage Co., 9 Cir., 144 F.2d 324, 327; Hatahley v. United States, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065.