## GUNN, SHERIFF, ET AL. v. UNIVERSITY COMMITTEE TO END THE WAR IN VIET NAM ET AL.

No. 7.   Argued January 13–14, 1969—Reargued April 29–30, 1970—
Decided June 29, 1970

*David W. Louisell* argued the cause for appellants on the original argument and on the reargument. With him on the brief on the reargument were *Crawford C. Martin,* Attorney General of Texas, *Nola White,* First Assistant Attorney General, *Robert C. Flowers* and *Howard M. Fender,* Assistant Attorneys General, and *Charles Alan Wright.* On the brief on the original argu-

ment were *Messrs. Martin, Flowers,* and *Fender,* and *Miss White.*

*Sam Houston Clinton, Jr.,* argued the cause for appellees on the original argument and on the reargument. With him on the brief were *Morton Stavis, Arthur Kinoy,* and *William M. Kunstler.*

MR. JUSTICE STEWART delivered the opinion of the Court.

On December 12, 1967, President Lyndon Johnson made a speech in Bell County, Texas, to a crowd of some 25,000 people, including many servicemen from nearby Fort Hood. The individual appellees[1] arrived at the edge of the crowd with placards signifying their strong opposition to our country's military presence in Vietnam. Almost immediately after their arrival, they were set upon by members of the crowd, subjected to some physical abuse, promptly removed from the scene by military police, turned over to Bell County officers, and taken to jail. Soon afterwards, they were brought before a justice of the peace on a complaint signed by a deputy sheriff, charging them with "Dist the Peace." They pleaded not guilty, were returned briefly to jail, and were soon released on $500 bond.

Nine days later they brought this action in a federal district court against Bell County officials, asking that a three-judge court be convened, that enforcement of the state disturbing-the-peace statute be temporarily and permanently enjoined, and that the statute be declared unconstitutional on its face, "and/or as applied to the

---

[1] The appellee University Committee to End the War in Viet Nam is an unincorporated association centered in Austin, Texas. The individual appellees are two members of the association and one nonmember who is sympathetic with its purposes.

conduct of the Plaintiffs herein." The statute in question is Article 474 of the Texas Penal Code, which then provided as follows:

"Whoever shall go into or near any public place, or into or near any private house, and shall use loud and vociferous, or obscene, vulgar or indecent language or swear or curse, or yell or shriek or expose his or her person to another person of the age of sixteen (16) years or over, or rudely display any pistol or deadly weapon, in a manner calculated to disturb the person or persons present at such place or house, shall be punished by a fine not exceeding Two Hundred Dollars ($200)."

A few days after institution of the federal proceedings the state charges were dismissed upon motion of the county attorney, because the appellees' conduct had taken place within a military enclave over which Texas did not have jurisdiction. After dismissal of the state charges the defendants in the federal court filed a motion to dismiss the complaint on the ground that "no useful purpose could now be served by the granting of an injunction to prevent the prosecution of these suits because same no longer exists." The appellees filed a memorandum in opposition to this motion, conceding that there was no remaining controversy with respect to the prosecution of the state charges, but asking the federal court nonetheless to retain jurisdiction and to grant injunctive and declaratory relief against the enforcement of Article 474 upon the ground of its unconstitutionality. A stipulation of facts was submitted by the parties, along with memoranda, affidavits, and other documentary material.

With the case in that posture, the three-judge District Court a few weeks later rendered a *per curiam* opinion,

expressing the view that Article 474 is constitutionally invalid, 289 F. Supp. 469. The opinion ended with the following final paragraph:

"We reach the conclusion that Article 474 is impermissibly and unconstitutionally broad. The Plaintiffs herein are entitled to their declaratory judgment to that effect, and to injunctive relief against the enforcement of Article 474 as now worded, insofar as it may affect rights guaranteed under the First Amendment. However, it is the Order of this Court that the mandate shall be stayed and this Court shall retain jurisdiction of the cause pending the next session, special or general, of the Texas legislature, at which time the State of Texas may, if it so desires, enact such disturbing-the-peace statute as will meet constitutional requirements." 289 F. Supp., at 475.

The defendants took a direct appeal to this Court, relying upon 28 U. S. C. § 1253, and we noted probable jurisdiction. 393 U. S. 819. The case was originally argued last Term, but was, on June 16, 1969, set for reargument at the 1969 Term. 395 U. S. 956. Reargument was held on April 29 and 30, 1970. We now dismiss the appeal for want of jurisdiction.

The jurisdictional statute upon which the parties rely, 28 U. S. C. § 1253, provides as follows:

"Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges."

The statute is thus explicit in authorizing a direct appeal to this Court only from an order of a three-

judge district court "granting or denying . . . an interlocutory or permanent injunction." Earlier this Term we had occasion to review the history and construe the meaning of this statute in *Goldstein* v. *Cox,* 396 U. S. 471. In that case a divided Court held that the only *interlocutory* orders that this Court has power to review under § 1253 are those granting or denying *preliminary* injunctions. The present case, however, involves no such refined a question as did *Goldstein.* For here there was no order of any kind either granting or denying an injunction—interlocutory or permanent. Cf. *Rockefeller* v. *Catholic Medical Center,* 397 U. S. 820; *Mitchell* v. *Donovan,* 398 U. S. 427. All that the District Court did was to write a rather discursive *per curiam* opinion, ending with the paragraph quoted above.[2] Although the Texas Legislature at its next session took no action with respect to Article 474, the District Court entered no further order of any kind. And even though the question of this Court's jurisdiction under § 1253 was fully exposed at the original oral argument of this case, the District Court still entered no order and no injunction during the 15-month period that elapsed before the case was argued again.

What we deal with here is no mere technicality. In *Goldstein* v. *Cox, supra,* we pointed out that: "This Court has more than once stated that its jurisdiction under the Three-Judge Court Act is to be narrowly construed since 'any loose construction of the requirements of [the Act] would defeat the purposes of Congress . . . to keep within narrow confines our appellate docket.' *Phillips* v. *United States* [312 U. S. 246], at 250. See *Stainback* v. *Mo Hock Ke Lok Po,* 336 U. S. 368, 375

---

[2] The court did also write an "addendum" in response to a motion for a new trial. 289 F. Supp., at 475.

(1949); *Moore* v. *Fidelity & Deposit Co.,* 272 U. S. 317, 321 (1926)." 396 U. S., at 478. But there are underlying policy considerations in this case more fundamental than mere economy of judicial resources.

One of the basic reasons for the limit in 28 U. S. C. § 1253 upon our power of review is that until a district court issues an injunction, or enters an order denying one, it is simply not possible to know with any certainty what the court has decided—a state of affairs that is conspicuously evident here. The complaint in this case asked for an injunction "[r]estraining the appropriate Defendants, their agents, servants, employees and attorneys and all others acting in concert with them from the enforcement, operation or execution of Article 474." Is that the "injunctive relief" to which the District Court thought the appellees were "entitled"? If not, what less was to be enjoined, or what more? And against whom was the injunction to run? Did the District Court intend to enjoin enforcement of all the provisions of the statute? Or did the court intend to hold the statute unconstitutional only as applied to speech, including so-called symbolic speech? Or was the court confining its attention to that part of the statute that prohibits the use, in certain places and under certain conditions, of "loud and vociferous . . . language"? The answers to these questions simply cannot be divined with any degree of assurance from the *per curiam* opinion.

Rule 65 (d) of the Federal Rules of Civil Procedure provides that any order granting an injunction "shall be specific in terms" and "shall describe in reasonable detail . . . the act or acts sought to be restrained." [3]

---

[3] Rule 65 (d) reads as follows:

"(d) Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall

As we pointed out in *International Longshoremen's Assn.
v. Philadelphia Marine Trade Assn.,* 389 U. S. 64, 74,
the "Rule . . . was designed to prevent precisely the
sort of confusion with which this District Court clouded
its command." An injunctive order is an extraordinary
writ, enforceable by the power of contempt. "The judi-
cial contempt power is a potent weapon. When it is
founded upon a decree too vague to be understood, it
can be a deadly one. Congress responded to that danger
by requiring that a federal court frame its orders so
that those who must obey them will know what the
court intends to require and what it means to forbid."
*Id.,* at 76.

That requirement is essential in cases where private
conduct is sought to be enjoined, as we held in the
*Longshoremen's* case. It is absolutely vital in a case
where a federal court is asked to nullify a law duly
enacted by a sovereign State. Cf. *Watson v. Buck,* 313
U. S. 387.[4]

The absence of an injunctive order in this case has,
in fact, been fully recognized by the parties. In their
motion for a new trial, the appellants pointed out to the
District Court that it had given no more than "an ad-
visory opinion." And the appellees, in their brief in
this Court, emphasized that "[n]o final relief—of any

describe in reasonable detail, and not by reference to the complaint
or other document, the act or acts sought to be restrained; and is
binding only upon the parties to the action, their officers, agents,
servants, employees, and attorneys, and upon those persons in active
concert or participation with them who receive actual notice of
the order by personal service or otherwise."

[4] This is not to suggest that lack of specificity in an injunctive
order would alone deprive the Court of jurisdiction under § 1253.
But the absence of any semblance of effort by the District Court
to comply with Rule 65 (d) makes clear that the court did not
think that its *per curiam* opinion itself constituted an order grant-
ing an injunction.

kind—has been ordered below." Accordingly, they said, "no question is now properly raised as to the precise form of federal remedy which may be granted." They asserted that "the issuance of declaratory and injunctive relief will . . . be appropriate at an appropriate time, to wit, on remand to the court below." But it is precisely because the District Court has issued neither an injunction, nor an order granting or denying one,[5] that we have no power under § 1253 either to "remand to the court below" or deal with the merits of this case in any way at all.[6]

The restraint and tact that evidently motivated the District Court in refraining from the entry of an injunctive order in this case are understandable. But when a three-judge district court issues an opinion expressing the view that a state statute should be enjoined as unconstitutional—and then fails to follow up with an injunction—the result is unfortunate at best. For when confronted with such an opinion by a federal court, state officials would no doubt hesitate long before disregarding it. Yet in the absence of an injunctive order, they are unable to know precisely what the three-judge court

---

[5] Even if the opinion and subsequent inaction of the District Court could be considered a denial of an injunction because the injunctive relief demanded was not forthcoming, the appellants could not appeal from an order in their favor. *Public Service Comm'n* v. *Brashear Freight Lines, Inc.,* 306 U. S. 204 (1939).

[6] We do not decide whether the District Court's opinion might have constituted a "judgment" so as to be appealable to the Court of Appeals for the Fifth Circuit. Cf. *United States* v. *Hark,* 320 U. S. 531, 534; *United States* v. *Schaefer Brewing Co.,* 356 U. S. 227, 232–233; *Burns* v. *Ohio,* 360 U. S. 252, 254–257. See R. Robertson & F. Kirkham, Jurisdiction of the Supreme Court of the United States § 45 (Wolfson & Kurland ed. 1951). In any event, we assume the District Court will now take formal action of sufficient precision and clarity to insure to any aggrieved party the availability of an appeal.

intended to enjoin, and unable as well to appeal to this Court.

It need hardly be added that any such result in the present case was doubtless unintended or inadvertent. We make the point only for the guidance of future three-judge courts when they are asked to enjoin the enforcement of state laws as unconstitutional.

The appeal is dismissed for want of jurisdiction.

*It is so ordered.*

MR. JUSTICE BLACKMUN took no part in the consideration or decision of this case.

MR. JUSTICE WHITE, with whom MR. JUSTICE BRENNAN joins, concurring.

I join the opinion of the Court but deem it appropriate to express my view that the opinion of the District Court should be viewed as having the operative effect of a declaratory judgment invalidating the Texas statute at issue in this case. The appellants were thus entitled to have this phase of the case reviewed in the Court of Appeals, but could not come directly here since our § 1253 jurisdiction is limited to appeals from injunctive orders. I agree with the Court that the opinion of the District Court cannot be construed as an order granting an injunction and that, if it amounts to an order denying an injunction, it is not appealable to this Court by the appellants.