The **SOCIALIST WORKERS PAR-TY** et al., Plaintiffs-Appellees,

v.

Attorney General John L. HILL and Mayor Louie Welch, Individually and in their Representative capacities, et al., Defendants-Appellants.

No. 72–3325.

United States Court of Appeals, Fifth Circuit.

Aug. 6, 1973.

Rehearing and Rehearing En Banc Denied Nov. 8, 1973.

Joseph G. Rollins, Senior Asst. City Atty., Houston, Tex., for Welch.

John L. Hill, Atty. Gen. of Tex., Sam L. Jones, Jr., W. O. Shultz, II, James C. McCoy, Asst. Attys. Gen., Robert W. Gauss, Austin, Tex., for Crawford Martin and Bullock.

Ronald D. Cohen, Houston, Tex., for plaintiffs-appellees.

Before WISDOM, GEWIN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

We are all Republicans—we are all Federalists. If there be any among us who would wish to dissolve this Union or to change its republican form, let them stand undisturbed as monuments of the safety with which error of opinion may be tolerated where reason is left free to combat it.

So spoke Thomas Jefferson, the author of the Declaration of Independence, in his first inaugural address as the third President of the United States, March 4, 1801.

(a) No person shall be permitted to have his name appear upon the official ballot as a candidate or nominee for any public office . . . unless and until he shall have filed a loyalty affidavit as required by this section.

\* \* \* \* \* \*

(c) The affidavit shall be in the following form:

I ————, of the County of ———————, State of Texas, being a candidate for the office of ————— do solemnly swear that I believe in and approve of our present representative form of government, and, if elected, I will support and defend our present representative form of government and will resist any effort or movement from any source which seeks to subvert or destroy the same or any part thereof, and I will support and defend the Constitution and laws of the United States and of the State of Texas.

\* \* \* \* \* \*

(d) The name of no candidate or nominee of any political party whose principles include any thought or purpose of setting aside representative form of government and substituting therefor any other form of government shall be permitted on the official ballot. It is specifically provided that no candidate or nominee of the Communist Party or the Facist Party or the Nazi Party shall ever be allowed a place on the official ballot at any election in this state.

So spoke the Texas Legislature in Section 6.02 of the Election Code of the State of Texas, V.A.T.S., one hundred and fifty years later.

The individual plaintiffs filed the instant action for themselves and as representatives of a class composed of all candidates or nominees for any public office in the State of Texas without explicit reference to any specific past or future election. They successfully sought an injunction restraining the enforcement of Section 6.02 in connection with the November 1971 elections and their names were placed on the ballot under a single judge injunctive order. After failing at the polls, plaintiffs won from a three-judge district court a judgment striking certain portions of the loyalty oath as unconstitutional. 345 F. Supp. 1132.

Relying on Gunn v. University Committee to End War in Viet Nam, 399 U. S. 383, 90 S.Ct. 2013, 26 L.Ed.2d 684 (1970) the defendant state officials appealed to this court seeking a reversal or in the alternative a remand for construction of Section 6.02 by the courts of the State of Texas. We hold that under the circumstances here present, jurisdiction is vested in this court. We affirm the judgment of the court below.

▆ *Jurisdiction*—Following a declaration that Section 6.02 abridged the First Amendment of the Constitution, the operative portion of the order appealed from provides:

Thus, by order of this court, the section reading "I believe in and approve of our present representative form of government, and, if elected, I will support and defend our present representative form of government and I will resist any effort or movement from any source which seeks to subvert or destroy the same or any part thereof, and" is struck from the oath leaving the rest intact.

This order does not specifically enjoin either negative or affirmative conduct by state officials as would be required by F.R.Civ.P. 65(d) if it was intended to be injunctive in nature. It is clear that its aim was only to declare the legal effect of the statute under attack. It is equally apparent that no injunctive relief was denied to the appellants, for they sought none. If anyone was denied injunctive relief it was the plaintiff-appellees who have taken no appeal. (*See* note 5 to Mr. Justice Stewart's opinion

for the court in *Gunn, supra,* 399 U.S. at 389, 90 S.Ct. at 2017, as well as Mr. Justice White's concurrence, 399 U.S. at 391, 90 S.Ct. at 2018). There is no basis for asserting that appellate jurisdiction is vested in the Supreme Court under the strictly construed provisions of 28 U.S.C. § 1253. Rather, the order appealed here may very naturally be construed as a final decision by a district court, the appellate jurisdiction of which is vested in this court under 28 U.S.C. § 1291.

■ *Mootness*—Because the judgment of the district court was not entered until eight months after the named plaintiffs had convincingly lost in their encounter before the electorate, the defendants contend the cause of action was moot when the final, declaratory order was entered. However, the class defined in their amended complaint was not limited to those who sought ballot positions in the November 1971 election process. Rather, it embraced all Texans, including themselves, who wished to run for public office at any unspecified time. The continuing interest which such a class has in the prerequisite loyalty oath now proscribed provides the necessary degree of concrete adverseness over the subject matter in dispute to support this action as a viable case or controversy. Then too, if the right to challenge this oath were to be limited to persons actively seeking to qualify for ballot positions in some specific forthcoming election, any such statute would be effectively immunized from constitutional attack because of the evanescent quality of standing to mount an attack.

*The Merits*—In the most recent authority discussing the constitutionality of oaths, Cole v. Richardson, 405 U.S. 676, 92 S.Ct. 1332, 31 L.Ed.2d 593 (1972), The Chief Justice summarized the present state of the pertinent law of oaths as follows:

We have made clear that neither federal nor state governments may condition employment on taking oaths which impinge rights guaranteed by the First and Fourteenth Amendments respectively, as for example those relating to political beliefs. . . .

Nor may employment be conditioned on an oath that one has not engaged, or will not engage, in protected speech activities such as the following: criticizing institutions of government; discussing political doctrine that approves the overthrow of certain forms of government; and supporting candidates for political office.

\*     \*     \*     \*     \*     \*

. . . They put the government into "the censorial business of investigating, scrutinizing, interpreting, and then penalizing or approving the political viewpoint" and past activities of individuals.

(citations omitted)

Applying these and the other principles discussed, the Court concluded that Massachusetts could require a research sociologist to swear or affirm:

That I will uphold and defend the Constitution of the United States of America and the Constitution of the Commonwealth of Massachusetts and that I will oppose the overthrow of the government of the United States of America or of this Commonwealth by force, violence or by any illegal or unconstitutional method.

■ There can be no room for serious disagreement that both the Massachusetts employment oath and the present Texas election oath are valid insofar as they extract formal promises to support or uphold and to defend the Constitutions of the United States and the State. Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966).

It is at the point of further comparison that the defendants' reliance on Cole v. Richardson breaks down. Mrs. Richardson was validly required to swear opposition to the forceful, violent overthrow of the government of each sovereign. In Texas a candidate must swear (a) belief in, (b) approval of, (c) support of, (d) defense of, and (e) resistance against any effort or movement from any source which seeks to subvert

or destroy—*the present representative form of government*. The meaning of "the present representative form of government" to which these comprehensive forms of obeisance and homage are required is made abundantly plain by the legislative proviso which immediately follows the prescribed oath.

(d) The name of no candidate or nominee of any political party whose principles include any thought or purpose of setting aside representative form of government and substituting therefor any other form of government shall be permitted on the official ballot. It is specifically provided that no candidate or nominee of the Communist Party or the Facist Party or the Nazi Party shall ever be allowed a place on the official ballot at any election in this state.

By this enactment Texas would proclaim that our freedom is too fragile to withstand the onslaught of new political ideologies. (Or at least that no such liberties can be extended to candidates —for, as the district court points out, no such stringent oath is extracted as a condition to holding any office.) Cole v. Richardson demonstrates this thesis is incompatible with our constitutional system. The single greatest source of America's strength is our basic premise that this government may never close the gateway to free men's minds to new ideas. The market place of politics has nothing to fear from the unencumbered presentation of novel theories of government. Even a brief glance about discloses that the majority of the civic systems in operation in Texas and in the United States are products of twentieth century solons. The fact that these systems are still embraced within the tent of a republican form of government attests to its enduring utility, but not to any ultimate constitutional prerogative of that system. The surest way to kill a bad idea is to thoroughly expose it. If it can't stand the heat in President Truman's kitchen crucible of politics, it's dead. If it wins acceptance and endures, then constitutional government grows more not less

secure. This is what the First Amendment is all about.

No state may condition the right to seek elective office on the willingness of candidates to foreswear their political beliefs and thoughts. The Socialist and the Communist may take their place by the Democrat and the Republican and compete for the ballots of Texans and Americans.

The judgment of the district court expressly declaring the portion of Section 6.02's oath providing

. . . I believe in and approve of our present representative form of government, and, if elected, I will support and defend our present representative form of government and will resist any effort or movement from any source which seeks to subvert or destroy the same or any part thereof, and . . .

to be unconstitutional and implicitly invalidating the succeeding paragraph (d) is

Affirmed.