SOCIALIST WORKERS PARTY, Ken Miliner, La Raza Unida Party, Andres Rodrigues Torres, Prohibition Party, William Scalf, Socialist Labor Party, Herbert Steiner, Libertarian Party, Elizabeth Jacobsen, Susan Margolia, Appellees,

v.

MARCH FONG EU, Secretary of State of the State of California, Appellant.

No. 77–1031.

United States Court of Appeals,
Ninth Circuit.

Sept. 26, 1978.

Rehearing Denied Jan. 26, 1979.

**1254**

Charlton G. Holland, Deputy Atty. Gen. (argued), San Francisco, Cal., for appellant.

Ray Hendrickson (argued), Newport Beach, Cal., for appellees.

Before TRASK and SNEED, Circuit Judges, and RICHEY,* District Judge.

SNEED, Circuit Judge:

This case considers a challenge to section 10210 of the California Elections Code under the First and Fourteenth Amendments. Appellant appeals from one part of the decision of a three-judge district court holding unconstitutional as applied to candidates for non-statewide offices section 10210 (unless otherwise indicated, all code references are to the Cal.Elec.Code). This section specifies that candidates of political parties qualified to participate in the state's primary election shall be designated by party affiliation on the general election ballot while any candidate qualifying for the ballot through the independent petition procedure shall be identified on the general election ballot solely as "Independent." Jurisdiction is conferred by 28 U.S.C. § 1291. We reverse.

## I.

### *Background.*

#### A. Statutory Framework.

California provides three routes for a candidate for partisan office to receive votes. First, candidates from political parties qualified under section 6430 who win their party's primary automatically receive a position on the general election ballot. Candidates associated with non-qualified parties, or connected with no party at all, can choose from two remaining alternatives. They may conduct a write-in campaign or they may qualify for the general election ballot through the "independent nomination" process outlined in section 6800 et seq.

Political parties in California under section 6430 are permitted to qualify only on a statewide basis. Section 6430 provides that a party is qualified to participate in any primary election if (1) any of its candidates in the last gubernatorial election for statewide office receive at least two percent of the vote; (2) 135 days before the primary

---

* Hon. Mary Anne Richey, United States District Judge, for the District of Arizona, sitting by designation.

election, the party possessed registration equal to one percent of the entire vote of the state in the last gubernatorial election; or (3) 135 days before the primary election voters equal to ten percent of the entire vote at the last gubernatorial election sign a petition in support of qualification of the party. Once a party has qualified through one of these procedures, it is entitled to participate in any partisan primary election until its registration falls below one-fifteenth of one percent of the total state registration (§ 6430.5) and it is unable to nominate a candidate who obtains the necessary two percent statewide vote in a gubernatorial election (§ 6430(a)).

California subjects qualified parties to formidable controls. Sections 8500–9956 spell out controls for each qualified party, including provisions respecting organization, meetings, and requirements for party control mechanisms. Qualified parties also must participate in an open primary election in which the nomination of party candidates is subject solely to the vote of members at large (§ 6610). Non-qualified parties are subject to no controls other than the independent nomination procedure outlined below.

If a candidate is not associated with a party or is associated with a party that cannot comply with § 6430, the candidate can attain general ballot status through the independent nomination procedures set forth in §§ 6830–6920. Candidates seeking to be nominated to a statewide office in this manner must receive signatures equal to one percent of the entire number of voters registered for the preceding general election (§ 6831). Independent nomination to an office other than a statewide office requires signatures equal to three percent of the entire number of voters registered for the preceding general election in the area for which the candidate is to be nominated (§ 6831). Petitions for a candidate's independent nomination may be signed by any voter registered in the district, notwithstanding that he voted a partisan ballot in the preceding primary election and without regard to support of any party that professes to nominate the candidate.

Section 10210 sets out the extent to which candidates for partisan office can have political affiliation indicated on the general election ballot. It states in full:

Political affiliation of candidates; independent candidates

In the case of candidates for partisan office in a general election or in a special election to fill a vacancy in the office of Representative in Congress, State Senator, or Member of the Assembly, immediately to the right of and on the same line as the name of the candidate, or immediately below the name, if there is not sufficient space to the right of the name, there shall be printed in eight-point roman lowercase type the name of the qualified political party with which the candidate is affiliated.

In the case of candidates for President and Vice-President, the name of the party shall appear to the right of and equidistant from the pair of names of such candidates.

If for a general election any candidate has received the nomination of any additional party or parties, the name(s) shall be printed to the right of the name of the candidate's own party. Party names of a candidate shall be separated by commas. *If a candidate has qualified for the ballot by virtue of an independent nomination, the word "Independent" shall be printed instead of the name of a political party in accordance with the above rules.* (emphasis added).

The mandatory inclusion of "Independent" precludes the designation of any party affiliation for an independent nominee to a partisan office. Such a nominee is only entitled to a statement not in excess of three words, allowed to any candidate, independent or not, designating the "principal professions, vocations, or occupations" of the candidate (§ 10211(3)).

B. Procedural Framework.

The present action comes to this court by appeal from the holding of a three-judge district court convened pursuant to 28 U.S.C. § 2281. It concerns the second part

of a lawsuit brought by appellees which challenged the constitutionality of § 10210. In the first part of the lawsuit the district court upheld § 6430 against a claim that it constituted an unconstitutional obstacle to ballot access. No appeal was taken from that determination.

Appellees in this second part of their lawsuit asked the district court for declaratory and injunctive relief mandating inclusion of party affiliation on the ballot for all independent nominees for statewide and non-statewide offices in the 1976 California general election and declaring the absolute exclusion of party affiliation for all independent nominees on the ballot unconstitutional. On cross motions for summary judgment, the district court granted partial declaratory relief in paragraph 1 of its judgment and denied all further relief in paragraph 2.[1] The district court held that § 10210 violated the Equal Protection Clause of the Fourteenth Amendment insofar as it gave candidates associated with *local* parties no means other than statewide qualification to have their political affiliation, instead of the term "Independent," printed on the ballot. However, the district court, by denying all paragraph 2 relief, denied injunctive relief with respect to the constitutional infirmity it saw in § 10210. Appellees appealed from paragraph 2 of the district court judgment directly to the Supreme Court in November 1976 pursuant to 28 U.S.C. § 1253.[2] The Court summarily affirmed the district court's ruling. *Socialist Workers Party v. March Fong Eu*, 433 U.S. 901, 97 S.Ct. 2964, 53 L.Ed.2d 1086 (1977).

Appellant brought this appeal to this court from the grant of declaratory relief in

October 1976, basing jurisdiction on 28 U.S.C. § 1291, which gives the courts of appeal jurisdiction from all final decisions of district courts except those final decisions "where a direct review may be had in the Supreme Court." On November 15, 1977 this court dismissed the appeal *sua sponte* on the grounds that it lacked jurisdiction in light of the Supreme Court's decision on direct appeal. Upon further consideration the appeal was reinstated on March 27, 1978 and expedited May 31, 1978. We must, accordingly, initially confront the issue of our jurisdiction to hear this appeal.

II.

*Appellate Court Jurisdiction.*

◾ Although the jurisdictional issue was not raised by either the appellant's opening brief, appellees' reply brief, or the appellant's closing brief, this court raised the issue *sua sponte*. This court based the dismissal of November 15, 1977 on two grounds: (1) that this court lacked jurisdiction; and (2) that the appellant's appeal was resolved by the summary affirmance issued from the Supreme Court. Appellant's petition for rehearing addressed the jurisdictional issue and, pursuant to our August 1, 1978 order, appellees have submitted a supplemental brief on the question. After considering the arguments on both sides we conclude that this court has proper jurisdiction and that the Supreme Court action has not precluded review by this court.

A. Effect of Supreme Court Summary Affirmance.

We must commence with acceptance of the Supreme Court's jurisdiction to deter-

---

1. The district court held solely:

   "1. The application of plaintiffs (excluding plaintiffs Camejo, Reid, Musa, Macbride, and Bergland) (all of whom were candidates for statewide offices) for declaratory relief is granted, and the Court hereby declares that Section 10210 is unconstitutional insofar as it prohibits the designation of political parties on the general election ballot following the name of a candidate for a non-statewide partisan office if the political party has not qualified pursuant to Section 6430 of the California Elections Code.

   2. All other requests for relief by plaintiffs are denied." (second parenthetical supplied).

2. Section 1253 provides:

   "Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges."

mine the merits of appellees direct appeal from the district court's denial of injunctive relief. *Gunn v. University Committee*, 399 U.S. 383, 90 S.Ct. 2013, 26 L.Ed.2d 684 (1970). No such certainty exists with respect to the entire nature and effect of the Supreme Court's decision, however. Section 1253 gave appellees the right to appeal only from "an order granting or denying . . . an . . . injunction." The Supreme Court has held that section 1253, however, does not authorize a direct appeal from a grant or denial of declaratory relief alone. *Gerstein v. Coe*, 417 U.S. 279, 94 S.Ct. 2246, 41 L.Ed.2d 68 (1974); *Gunn, supra; Mitchell v. Donovan*, 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970); *Rockefeller v. Catholic Medical Center of Brooklyn and Queens, Inc.*, 397 U.S. 820, 90 S.Ct. 1517, 25 L.Ed.2d 806 (1970). Nevertheless, the Court has held that it may review both the injunctive and declaratory aspects of a case when a case is properly before it under § 1253 and the arguments as to both aspects are necessarily identical. *Roe v. Wade*, 410 U.S. 113, 123, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Our problem, however, is not whether the Court could have reviewed the declaratory aspects, but whether in its summary affirmance it did so.

The solution of this problem is not easy. The Supreme Court has stated, "Ascertaining the reach and content of summary actions may itself present issues of real substance . . . ." *Hicks v. Miranda*, 422 U.S. 332, 345 n. 14, 95 S.Ct. 2281, 2290, 45 L.Ed.2d 223 (1975). In *Mandel v. Bradley*, 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977) (per curiam), the Court shed some light on the reach and content of summary actions when it reversed the judgment of a district court that had issued an injunction upon a misinterpretation of a summary affirmance. The Court's opinion makes it clear that courts must exercise care to limit the scope of such precedent. Mr. Justice Brennan, concurring with the Court's opinion, expanded upon the analysis required in this effort:

"After today, judges of the state and federal systems are on notice that, before deciding a case on the authority of a summary disposition by this Court in another case, they must (a) examine the jurisdictional statement in the earlier case to be certain that the constitutional questions presented were the same and, if they were, (b) determine that the judgment in fact rests upon decision of those questions and not even arguably upon some alternative nonconstitutional ground."

*Id.* at 180, 97 S.Ct. at 2242.

Employing Mr. Justice Brennan's guidelines we look first to the appellees' jurisdictional statement made in connection with its appeal to the Supreme Court. That statement confined the scope of the appeal to questions raised by paragraph 2 of the district court's judgment, *i. e.*, the denial of all further relief. It refers to the Notice of Appeal to the Supreme Court filed with the district court November 23, 1976 which states only that plaintiff-appellees had appealed "from the entirety of Paragraph Two of the Judgment of the District Court." Not only does the present appeal concern only the substance of paragraph 1, which was decided in favor of appellees, but, in addition, the appellees in their exposition of the questions presented on appeal to the Supreme Court made no mention of the issue raised by this appeal, *i. e.*, the propriety of the district court's holding § 10210 unconstitutional as applied to *non-statewide* partisan offices. The pertinent issue set forth in the appellee's jurisdictional statement to the Supreme Court was:

"(3) Whether California can constitutionally prohibit candidates nominated by petition under §§ 6800 et seq. from accurately designating their political affiliation to be printed *on the statewide ballot*, or whether California can instead insist that the word 'Independent' appear next to the name of every such candidate." (emphasis added).

By appealing to the Supreme Court from paragraph 2 of the district court judgment, the appellees did properly place before the Supreme Court the denial of an injunction as to *non-statewide* offices. Such offices also were the focus of the district court's

paragraph 1 declaratory relief. It is a fact, however, that the denial of an injunction as to such offices was based on grounds other than those raised in this appeal and peculiar to the situation that existed at the time of the district court's judgment.[3]

■ The appellant filed no cross-appeal of any kind with the Supreme Court. Thus, it did not request that the Supreme Court review paragraph 1 of the judgment. Generally, the Court cannot review the portion of a judgment from which no cross-appeal is taken. *Morley Construction Co. v. Maryland Casualty Co.*, 300 U.S. 185, 191–92, 57 S.Ct. 325, 81 L.Ed. 593 (1937). *See Swarb v. Lennox*, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972). *Fusari v. Steinberg*, 419 U.S. 379, 387 n. 13, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975), which acknowledged that issues not raised by the parties which provide *non-constitutional* grounds in support of the district court judgment can be considered on appeal, does not benefit appellees. Here the district court denied injunctive relief as to non-statewide partisan offices on grounds unrelated to the underlying constitutional arguments. It would stand *Fusari* on its head to contend that it permits the consideration on appeal of *constitutional* issues not raised which support the district court's judgment when that judgment properly rests on non-constitutional grounds. Therefore, we will not broaden the necessary scope of the Supreme Court's summary action by interpreting it to have decided those unmentioned consti-

tutional theories embraced by the district court in paragraph 1 of its judgment. Moreover, *Fusari* did not involve a summary disposition, and *Mandel* cautions us to be hesitant in applying the broad language found in non-summary dispositions, such as *Fusari* and *United States v. Raines*, 362 U.S. 17, 27 n. 7, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960), to summary dispositions.

**B. No Mandatory Cross-Appeal to the Supreme Court.**

Having decided that the Supreme Court's summary affirmance did not decide the issue before us, we next must consider whether appellate jurisdiction is confined solely to direct appeal to the Supreme Court under 28 U.S.C. § 1253. Should that be the case, we must dismiss this appeal. We are of the opinion that appellant was not required to cross-appeal in this case and that this court has jurisdiction to hear this appeal.

■ *Roe v. Wade, supra* p. 1257, is not to the contrary. The Supreme Court stated it had jurisdiction to review both injunctive and declaratory aspects of a district court judgment when the § 1253 appeal was from a denial of injunctive relief and arguments as to both aspects were *necessarily* identical. "It would be destructive of time and energy for all concerned were we to rule otherwise." 410 U.S. at 123, 93 S.Ct. at 712.[4] We view *Roe v. Wade* as holding only that the Supreme Court *may* take jurisdiction when the issues presented by the cross-

---

**3.** The district court denied injunctive relief because it could not ensure that the candidates in fact represented a particular party or that the persons signing candidates' petitions were aware of party affiliation.

**4.** In *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), plaintiffs appealed from a three-judge district court decision claiming that they were entitled both to an injunction and to broader declaratory relief. Defendants did not cross-appeal in that case. Instead, defendants had previously attempted a direct appeal pursuant to 28 U.S.C. § 1253 which the Court dismissed for want of jurisdiction. *Bolton v. Doe*, 402 U.S. 936, 91 S.Ct. 1633, 29 L.Ed.2d 104 (1971). Defendants' alternative direct appeal to the Court of Appeals for the Fifth Circuit remained in effect. Citing *Swarb*

*v. Lennox*, 405 U.S. 191, 201, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972), the Court acknowledged that technically the extent to which the district court had held portions of the state statutes in question unconstitutional in plaintiffs' favor was not before them. *Bolton*, 410 U.S. at 187, 93 S.Ct. 739. In a footnote the Court noted that its disposition might nonetheless affect the issues on appeal to the Circuit Court of Appeals. Although the Court did not decide specifically that a cross-appeal would have been appropriate also, this disposition indicates that although the Court can determine all aspects of a case properly before it, it need not do so. The recognition that both avenues of appeal could be valid suggests that a cross-appeal is not mandatory.

appeal are necessarily identical to the issues raised by the appeal of the denial of injunctive relief. In this case, the necessary identity of issues does not exist. While a hypothetical cross-appeal would have raised the constitutionality of the statute as applied to non-statewide offices directly, the issue was not inescapably raised by the appellees' § 1253 appeal to the Supreme Court. To uphold the district court's denial of injunctive relief the Supreme Court was not required to consider the constitutionality of § 10210. It could have relied exclusively on the unrelated grounds employed by the district court. *Roe v. Wade* thus provides no assurance that the Supreme Court considered the constitutionality of § 10210.

Appellees argue in their jurisdictional brief that the analysis in *Jagnandan v. Giles*, 538 F.2d 1166 (1976), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977) is relevant to our decision on jurisdiction in this case. In fact, *Jagnandan* supports our exercise of jurisdiction. Plaintiffs in that case sought as a class to have declared unconstitutional a Mississippi statute requiring alien residents to pay nonresident tuition at the State University, and sought restitution of tuition already paid. The district court denied the class action, declared the statute unconstitutional and granted injunctive relief, but refused to award any reimbursement. Plaintiffs appealed *only* the reimbursement question, neither the injunctive nor the declaratory issue was raised. The Fifth Circuit expressed concern that the reimbursement issue might be so interrelated with the grant of injunctive relief as to require simultaneous disposition on review before the Supreme Court. But because no direct appeal was taken to the Supreme Court by the defendants, there was no possibility in that case of an overlap of review. The court asserted jurisdiction over the reimbursement question, employing reasoning that is equally applicable in this case:

"By holding that we have jurisdiction to hear the appeal, we are supporting 'the historic congressional policy of minimizing the mandatory docket of . . . [the Supreme Court] in the interest of

sound judicial administration.' *MTM, Inc. v. Baxley*, . . . [420 U.S. 799, 95 S.Ct. 1278, 43 L.Ed.2d 636 (1975)] at 804 . . . ."

*Jagnandan, supra* p. 1259, at 1171.

■ Our decision on jurisdiction in this case also favors "sound judicial administration." Assuming arguendo appellant could have cross-appealed to the Supreme Court, nothing requires her to do so when the issues necessarily differ. Judicial economy is not harmed by having this appellate court, which would have been the appropriate avenue of appeal in the absence of a request for injunctive relief, consider an issue neither raised nor argued before the Supreme Court. This disposition does not *require* the fragmentation of appeals. We hold only that when the Supreme Court, through summary affirmance, upholds a three-judge district court's denial to the plaintiff of injunctive relief, which the district court based on grounds not identical to those involved in considering the propriety of accompanying declaratory relief and which denial was not raised by cross-appeal, the defendant can attack the district court's decision through the normal appeal channel provided by 28 U.S.C. § 1291. In so doing we minimize the mandatory docket of the Supreme Court.

### III.

#### *Constitutional Argument.*

Our holding that jurisdiction exists requires that appellees' constitutional contentions be analyzed. Appellees argue that the operation of § 10210, in conjunction with § 6430, unconstitutionally violates their rights to freedom of speech and association under the First and Fourteenth Amendments and their rights to equal protection under the Fourteenth Amendment.

#### A. Appellees' Constitutional Interests.

In a number of cases, the Supreme Court has scrutinized laws regulating the electoral process. *E. g., Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *American Party of Texas v. White*, 415 U.S. 767,

94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). In so doing, it has established "two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. at 30, 89 S.Ct. at 10.

The freedom to associate, guaranteed by the First Amendment, has been held to be "fundamental" in several Court opinions, *Buckley, supra*, 424 U.S. at 15 & 25, 96 S.Ct. 6; *American Party of Texas, supra*, 415 U.S. at 780, 94 S.Ct. 1296; *Storer, supra*, 415 U.S. at 729, 94 S.Ct. 1274, as has the right of citizens to participate equally in the electoral process, *e. g., San Antonio School District v. Rodriquez*, 411 U.S. 1, 59 n. 2, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Reynolds v. Sims,* 377 U.S. 533, 555, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

On the other hand, we have found no case specifically holding that candidates have a right to have specific information identifying their associates placed on the ballot, or that voters, in order to vote effectively, have a right to be informed of those associates by information appearing on the ballot. Nonetheless, we recognize that section 10210 has possible effects on both associational and voting rights. The failure to permit a nonqualified party designation in non-statewide elections, and the requirement that the designation "Independent" be employed by all independent petition procedure candidates, does fail to inform the voters fully and possibly can contribute to misunderstanding by some voters.

However, we are by no means confident that these consequences affect "fundamental rights" of either candidates or voters. It is open to argument that, within the structure of section 10210, the proper iden-tification of associates and elimination of such voter misunderstandings as might otherwise occur are the responsibilities of the candidates and voters, and that the failure of the state to assume such responsibilities does not affect "fundamental rights."

█ Whatever the merits of this position, we shall assume, arguendo, that section 10210 does affect "fundamental rights." We therefore turn to determine whether section 10210 imposes a substantial burden thereon.

The Supreme Court has held that: "*substantial* burdens on the right to vote or to associate for political purposes are constitutionally suspect and invalid under the First and Fourteenth Amendments and under the Equal Protection Clause unless essential to serve a compelling state interest." (emphasis added). *Storer*, 415 U.S. at 729, 94 S.Ct. at 1279. The district court held that section 10210, as applied to non-statewide elections, substantially burdened protected constitutional rights and that the strict scrutiny standard should be applied. We find, however, that no impermissible burden on appellees' rights is imposed by section 10210.

█ The Supreme Court seldom has had to consider the degree of burden on fundamental rights caused by state voting regulation. In most cases the burden was substantial because the restriction led to absolute exclusion of certain voter options through denial of ballot access, *e. g., American Party of Texas, supra* p. 1259; *Storer, supra* p. 1260; *Bullock, supra* p. 1260; *Williams, supra* p. 1260, or by denial of the franchise itself, *e. g., Dunn v. Blumstein, supra* p. 1260; *Kramer v. Union School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Carrington v. Rash*, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965). As the Court has recognized, however, "not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review." *Bullock*, 405 U.S. at 143, 92 S.Ct. at 856. A court must "examine in a realistic light the extent and nature of . . . [a restriction's] impact

on voters." *Id.* Similarly, the Court has stated that the Equal Protection Clause does not extend to all differences in treatment:

> "If claiming an equal protection violation, the appellant's burden was to demonstrate in the first instance a discrimination against them of some substance. 'Statutes create many classifications which do not deny equal protection; it is only "invidious discrimination" which offends the constitution.' *Ferguson v. Skrupa*, 372 U.S. 726, 732 [83 S.Ct. 1028, 1032, 10 L.Ed.2d 93] (1963)." (footnote omitted).

*American Party of Texas*, 415 U.S. at 781, 94 S.Ct. at 1306.

■■■ In this case California has placed no unconstitutional restrictions on ballot access. It merely limits an indication of party affiliation to those parties that have qualified on a statewide basis, participate in the state primary, and subject themselves to other state regulation. Appellees argue that to list candidates as "Independent" who affiliate themselves with a non-qualified political party leads to voter confusion. The term "Independent" has a clear meaning in the context of the California ballot qualification procedure. A state may in good faith choose a term of art to categorize its candidates without impermissibly burdening their rights or the rights of those who vote for or associate with them. That some voters may mistake the term does not in itself make this categorization a substantial burden. "Independent" accurately explains the presence of the candidate's name on the ballot. That label, as applied to a candidate from a non-qualified party who has beliefs in common with a certain percentage of a district's registered voters, is no more misleading than the label "Democrat" or "Republican" when applied to a person who has won that party's primary but who has beliefs that differ substantially from those of the statewide party. In each case the appellation is a legitimate description indicating the reason a name is on the ballot. In the absence of other misleading conduct, such voter misinformation as might exist cannot be construed to be a substantial burden either on voting or associational rights. Under these circumstances a "compelling state interest" need not be established.[5]

It follows, therefore, that we should apply the standard employed in *McDonald v. Board of Election*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). In that case, the Court, in upholding an Illinois statute restricting the availability of absentee ballots, applied the more lenient "rational basis" test. It determined that the distinctions drawn by the statute bore a rational relationship to a legitimate state end and were based on reasons related to that goal. *Id.* at 809, 89 S.Ct. 1404.

Similarly, in *Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973), the Court upheld a New York statute that required voters to enroll in the party of their choice at least 30 days before the general election in November in order to vote in the subsequent party primary. The Court distinguished those cases in which a class of voters was entirely disenfranchised. *Id.* at 757, 93 S.Ct. 1245. The Court held that the time period established was not an "arbitrary time limit unconnected to any important state goal." *Id.* at 760, 93 S.Ct. at 1251. Finally, the Court stated:

> "New York did not prohibit the petitioners from voting in the 1972 primary election or from associating with the political party of their choice. It merely imposed a legitimate time limitation on their enrollment, which they chose to disregard."

*Id.* at 762, 93 S.Ct. at 1252.

The burden imposed by California by § 10210 is even less substantial than that

---

5. The methodology of the Supreme Court in analyzing statutes affecting voting rights to determine their constitutionality is not easily discerned. *See Rosario v. Rockefeller, infra*, 410 U.S. at 767–70, 93 S.Ct. 1245 (Powell, J. dissenting). As we read its opinions, a statute must impose more than insubstantial burdens on constitutionally protected voting rights before a close scrutiny standard is required. *See Cf. Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). An insubstantial impingement on a "fundamental right" should be scrutinized no more closely than a substantial burden on a "not fundamental right."

imposed by New York in *Rosario*. California does not inhibit voter choice in an absolute manner—local candidates have liberal access to the ballot and are free to associate with local political parties of their choice, and no voter is prevented from voting for a candidate in an election. Such burden as may be imposed on the growth of local parties is not substantial and does not constitute an invidious or arbitrary classification.

The district court relied on *Riddell v. National Democratic Party*, 508 F.2d 770 (5th Cir. 1975), to support its application of the compelling state interest standard. There a Mississippi statute was held unconstitutional which prohibited a political party from *using or registering* "any name or part thereof" which had previously been registered by another political party. As applied by the State of Mississippi, the statute prevented the so-called "Loyalists" from using the word "Democratic" in its title, a provision designed to favor the so-called "Regulars," an older and more conservative faction of the Democratic Party. The court stated, "In our view there can be no serious doubt that the grant of exclusive rights to the name 'Democratic Party' or the title 'Democratic' . . . constitutes a substantial burden on the ability of Loyalists to organize in the state." *Id.* at 776. The burden in *Riddell* is distinguishable from that imposed by § 10210. The Mississippi statute prevented the use of a party name or even a part of a name; California does not prohibit local parties from choosing a particular name to assist in its organizational efforts or from actively promoting the election of a specific candidate. Nor is race a factor in California's statutory scheme as it undoubtedly was in Mississippi's.[6]

To the extent it exists, California's burden on fundamental rights is not substantial. It improperly burdens neither candidates nor parties. Its decision to indicate the method through which a candidate has come to appear on the ballot—through the regulated statewide primary of a party or through an independent nomination procedure—inflicts no substantial burden on candidates or their associational rights. Local candidates are in a particularly advantageous position to communicate their party affiliation and its relevance to voters. The distinction drawn between statewide parties and local parties does not burden associational or voting rights where, as here, local parties may still qualify candidates, organize and publically endorse their candidates and provide to voters the freedom of choice. A state may rationally choose to have a statewide party qualification and regulation mechanism and to list on the ballot for the benefit of voters the method by which the candidate's place on the ballot was attained. It need not provide publicity to the candidate's party when his position on the ballot may be substantially attributable to the signatures of voters who are not members of his party.

We hold that § 10210 is rationally related to the state's legitimate interest in regulating its electoral process.

REVERSED.

---

6. *MacBride v. Exon*, 558 F.2d 443 (8th Cir. 1977) and *Shaw v. Johnson*, 247 N.W.2d 921 (Minn.1976), also cited by appellees, are not relevant. *MacBride* stands solely for the proposition that a state may not perpetuate a statutory scheme that operates to completely prevent a independent party presidential candidates from ever obtaining ballot status. *Shaw* was merely concerned with whether, within the context of the policy reflected by an admittedly inapplicable state statute, voter confusion would result if one candidate were allowed to use solely 'independent' as a ballot designation while others used the term 'independent-republicans.' In holding that such dual use did not contravene the statute's policy *Shaw* did not address the substantiality of any burden that a contrary result would have imposed.