**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Menelao Orlando ESTEVEZ, Defendant–Appellant.**

**No. 87–1669.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1988.

Decided July 13, 1988.

Rehearing and Rehearing En Banc Denied Aug. 31, 1988.

Howard M. Srebnick, William P. Cagney, P.A., Miami, Fla., for defendant-appellant.

Eric J. Klumb, Asst. U.S. Atty., Joseph Stadtmueller, U.S. Atty., R. Jeffrey Wagner, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before FLAUM and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

On September 29, 1986 a grand jury returned a second superseding indictment against Menelao Orlando Estevez, charging him in part with conducting a continuing criminal enterprise in violation of 21 U.S.C. § 848. Pursuant to the criminal forfeiture provisions of 21 U.S.C. § 853, the government applied to the district court for an ex parte restraining order to prevent the defendant and his agents from transferring any of the assets listed in the forfeiture provision of the indictment. The court granted the restraining order on September 12, 1986. Attorney William P. Cagney, III entered an initial limited appearance on Estevez's behalf. Because the district court exempted only $40,000 in attorneys' fees from the forfeiture order, but would not exempt all attorneys' fees, Cagney withdrew his representation of Estevez on October 27, 1986. Cagney appeals from the district court's October 20, 1986 order which created a limited exemption to the restraining order for attorneys' fees.

I.

On August 26, 1986 a grand jury returned a 21–count superseding indictment charging Estevez and nineteen other individuals with various drug-related offenses, including conducting a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848. The indictment contained a forfeiture provision which alleged that a variety of assets belonging to the defendants were

forfeitable pursuant to 21 U.S.C. § 853. This statute provides that persons convicted of certain specified crimes (including conducting a CCE) forfeit the property and proceeds used in connection with the unlawful activity, obtained as a result of the illegal conduct, or which afforded a source of control over a CCE. On September 9, 1986 the grand jury returned a second superseding indictment which more fully described some of the assets listed in the forfeiture provision and set forth additional assets that would be subject to forfeiture.

Following the return of the second superseding indictment, the government applied for an ex parte restraining order pursuant to 21 U.S.C. § 853(e)(1)(A).[1] On September 12, 1986 the court entered a restraining order prohibiting the defendants and their agents from transferring or disposing of the assets described in the forfeiture provision of the second superseding indictment. Estevez was arraigned on September 30, 1986. At that time Cagney entered a limited appearance on his behalf for the sole purpose of contesting the forfeitability of attorneys' fees under 21 U.S. C. § 853. On October 8, 1986 the defendant filed a motion to modify the restraining order to permit him to expend his own funds to pay his attorney and his family's living expenses. Estevez also sought an immediate hearing on the question of the constitutionality of the forfeiture of attorneys' fees. Pursuant to the defendant's request for a modification of the court's order, Cagney informed the court that he would not represent Estevez until the issue of the forfeiture of attorneys' fees was resolved.

On October 20, 1986 the district court entered an order permitting Estevez to expend any of his own funds that were not covered by the restraining order to pay his attorney. In addition, the court exempted $40,000 from forfeiture for the payment of attorneys' fees. The defendant immediately filed a motion asking the court to reconsider its order. In response to this motion, on October 27 the court orally amended its order; this modified order was entered on the court's docket on the same day. The modified order provided that the court would increase the $40,000 forfeiture exemption in the future if it concluded that "more that $40,000 was a reasonable and necessary attorney's fee." Nonetheless, Cagney refused to continue to represent Estevez under the conditions set forth in the court's modified order.[2]

On October 27, 1986 Estevez filed a notice of appeal from the court's modified order of the same date. Estevez's trial began on November 17, 1986; he was convicted on all charges on December 17. Accordingly, on February 2, 1987 we dismissed his appeal as moot.[3] On April 13, 1987 Estevez was sentenced on his conviction. Ten days later Cagney for the first

---

**1.** 21 U.S.C. § 853 provides for the imposition of ex parte restraining orders as follows:

(e) Protective orders

(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section—

(A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section[.]

. . . . .

**2.** Cagney's notice of appeal indicated that he was appealing from the October 20 order, not

the court's modified order of October 27. However, because the second order arguably revised the parties' legal rights, the time limit for filing a notice of appeal may have begun on October 27, rather than October 20. *See Exchange Nat'l Bank of Chicago v. Daniels*, 763 F.2d 286, 289 (7th Cir.), *aff'd*, 768 F.2d 140 (7th Cir.1985). This distinction is irrelevant in the present case, however, because Cagney's notice of appeal was not filed within ten days of the court's entrance of its October 27 modified order.

**3.** On appeal Estevez challenged the October 20 order on the ground that it violated his sixth amendment right to counsel. Because Estevez could raise this challenge in a post-conviction appeal, the interlocutory appeal was rendered moot by his subsequent conviction. In fact, Estevez did raise this sixth amendment challenge in his post conviction appeal. *United States v. Moya–Gomez*, No. 87–1262, argued January 14, 1988.

time filed a notice of appeal from the district court's October 20 order on his own behalf. Because we conclude that Cagney failed to file a timely notice of appeal, we dismiss his appeal for want of jurisdiction.

## II.

Filing a notice of appeal in a timely fashion is mandatory and jurisdictional. *Budinich v. Becton Dickinson and Co.*, — U.S. —, 108 S.Ct. 1717, 1722, 100 L.Ed.2d 178 (1988); *Browder v. Director*, 434 U.S. 257, 271–72, 98 S.Ct. 556, 564–65, 54 L.Ed.2d 521 (1978); *Redfield v. Continental Cas. Corp.*, 818 F.2d 596, 600 (7th Cir.1987). Because this requirement is jurisdictional, it cannot be waived. *Sonicraft, Inc. v. NLRB*, 814 F.2d 385, 387 (7th Cir. 1987). Federal Rule of Appellate Procedure 4 establishes the time limits within which a notice of appeal must be filed.[4] To the extent that any provision of Rule 4 is applicable to Cagney's personal appeal in this case, *see supra* note 6, the most applicable provision is the ten day limitations period for criminal matters. Although Cagney filed a notice of appeal on April 23, 1987, ten days after Estevez was sentenced pursuant the jury's verdict, it was six

months after the district court entered the order from which he appeals.

Cagney argues that his notice of appeal was timely because it was filed within ten days of the entry of the final judgment of the district court in Estevez's case—the imposition of sentence.[5] What Cagney's argument fails to acknowledge, however, is that Cagney does not have standing to challenge Estevez's conviction or sentence. Cagney is appealing the district court's October 20 order, not Estevez's conviction or sentence. Therefore the provision of Rule 4, providing that a notice of appeal filed before the entry of judgment will be considered filed on the day the judgment is entered, is inapplicable.

The only provision that might conceivably extend the time for filing a notice of appeal in this case is the provision of Rule 4 that a notice of appeal filed before an *order* from which the party appeals was entered is considered to have been filed on the date the *order* was entered. This provision, however, cannot excuse Cagney's failure to file a timely notice of appeal because his notice was not filed before the court's October 20 order, but six months after that order was entered. Assuming that Cagney even had standing to challenge the district court's October 20 order,[6]

---

4. Federal Rule of Appellate Procedure 4 provides in relevant part:

   **(b) Appeals in Criminal Cases.** In a criminal case the notice of appeal by a defendant shall be filed in the district court within 10 days after the entry of the judgment or order appealed from. A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof.... A judgment or order is entered within the meaning of this subdivision when it is entered in the criminal docket....

5. Cagney does not, however, argue that his failure to file a timely notice of appeal was induced by the actions of the district court. *Cf. United States v. Hocking*, 841 F.2d 735, 737 (7th Cir. 1988) (collecting cases) (questioning the continued viability of the rule permitting courts to act on untimely motions induced by a district court's erroneous extension of time to file).

6. We doubt that Cagney would have had standing to challenge the court's restraining order if he had filed a timely notice of appeal. A federal court's jurisdiction is limited by Article III of

the Constitution to the resolution of cases or controversies. At a minimum Article III

requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 [99 S.Ct. 1601, 1608, 60 L.Ed.2d 66] (1979), and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 28, 41 [96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450] (1976).

*Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (footnote omitted).

Cagney probably could not satisfy the first requirement of Article III standing because he does not appear to have suffered any actual or threatened injury. By refusing to represent Estevez under the conditions set forth in the court's October 20 order (as modified October 27), Cagney avoided the possibility of suffering an injury in fact. Had Cagney continued to represent Estevez, demonstrated that a $40,000

the filing deadline began to run when the order was entered, not when Estevez was sentenced. Because Cagney failed to file a notice of appeal within ten days of the entrance of the court's October 20 order, we do not have jurisdiction to consider the merits of this appeal. The appeal is DIS-MISSED.

fee was unreasonably low, unsuccessfully tried to extend the district court's exemption beyond $40,000, and failed to obtain satisfaction of his fee request from Estevez's nonforfeitable funds, he might then have suffered a distinct and palpable injury sufficient to satisfy the constitutional requirements of standing. Of course, this scenario also presumes Estevez's conviction and the government's success in a subsequent civil forfeiture proceeding. Although we do not resolve the question, we note that because standing is a jurisdictional requirement, it is unlikely that we would have jurisdiction over this appeal even if the notice of appeal had been timely.