In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 18-3402

AUTO DRIVEAWAY FRANCHISE SYSTEMS, LLC,

*Plaintiff-Appellee,*

*v.*

AUTO DRIVEAWAY RICHMOND, LLC, and
INNOVAUTO USA, LLC,

*Defendants,*

*and*

JEFFREY CORBETT,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 C 4971—**Manish S. Shah**, *Judge.*

---

ARGUED FEBRUARY 4, 2019 — DECIDED JUNE 28, 2019

---

Before WOOD, *Chief Judge*, and EASTERBROOK and ST. EVE, *Circuit Judges.*

WOOD, *Chief Judge*. This litigation presents a clash between a franchisor and a franchisee who may (or may not) have

allowed their agreement to expire. Auto Driveaway Franchise Systems, LLC ("Auto Driveaway") is a franchisor for commercial vehicle transportation services; Jeffrey Corbett was one of its franchisees. Through his company, Auto Driveaway Richmond, LLC ("AD Richmond"), Corbett ran Auto Driveaway franchises in Richmond (Virginia), Nashville, and Cleveland. The arrangement was satisfactory for some time, but it went downhill after Auto Driveaway heard that Corbett was opening businesses that competed with Auto Driveaway behind its back. Adding insult to injury, Corbett was also allegedly using Auto Driveaway's name to lend legitimacy to the new ventures. Taking the position that Corbett's actions breached the non-compete clauses of the franchise contracts and misused Auto Driveaway's trademarks, Auto Driveaway brought this suit. The case has come to us on Corbett's appeal from a preliminary injunction the district court entered. See 28 U.S.C. § 1292(a)(1).

Before considering that injunction directly, we must address several procedural problems that relate to our appellate jurisdiction and the form of the injunction. We conclude that our jurisdiction is secure, but that the district court must revisit both the form of the injunction and the amount of security it required.

I

Corbett's three business locations were governed by separate, but substantively identical, franchise agreements with Auto Driveaway. Corbett signed each one as the sole owner of AD Richmond. Each agreement included the following: a non-compete clause, a non-disclosure clause, and a five-year term set to expire in 2016. Those expiration dates came and went, but both parties initially continued dealing as though

the agreements were still in place. Not until November 2017 did Auto Driveaway mail a letter to Corbett offering formally to renew the franchise contracts for another five years beginning February 2018. Corbett never responded to the letter; instead, he continued operating his franchises as before.

Some time after the November 2017 letter, Auto Driveaway learned that Corbett had been taking actions in apparent violation of the franchise agreements. Corbett, it learned, was building an app to compete against the app it had hired Corbett to build for itself. Auto Driveaway also suspected that Corbett was using Auto Driveaway's proprietary work product as a starting point. To make matters worse, Corbett was set to launch his own app through a new company, InnovAuto, that also provided auto transportation services, in direct competition with Auto Driveaway. Auto Driveaway quickly filed this lawsuit seeking to stop Corbett, InnovAuto, and sales or use of the app. One month later it formally terminated its relationship with Corbett and AD Richmond.

In his initial answer to the complaint, Corbett admitted that the franchise terms under his agreement with Auto Driveaway were extended on a month-to-month basis after they expired in 2016. He attempted to walk back that admission later in an amendment to his answer; the new version took the position that the franchise agreements expired and that the November 2017 letter from Auto Driveaway was a unilateral offer that Corbett never accepted.

Several months later, Auto Driveaway discovered that Corbett had another competitive auto transport business, Tactical Fleet. Though Tactical Fleet was not named in the original complaint, Auto Driveaway asked the district court for a preliminary injunction to stop Corbett from operating that

company as well as InnovAuto and the app. After a brief hearing, the district court issued an order granting Auto Driveaway's motion, based on evidence that Corbett was harming consumer goodwill toward Auto Driveaway and was taking Auto Driveaway customers through his competing businesses. In broad strokes, the order states that Corbett may not engage in any conduct that might violate the non-compete clause of the franchise agreement. The court required Auto Driveaway to post a $10,000 bond as security for the injunction; it did so.

## II

Before we can address the propriety of the injunction, we must ensure that it is properly before this court and free of procedural defects. There are potentially three problems with this injunction: its timeliness, its scope, and its specificity. We review each *de novo*. See *Loertscher v. Anderson*, 893 F.3d 386, 392 (7th Cir. 2018).

## A

The first question is whether this appeal is now moot. While it was pending, the district court granted Corbett and Auto Driveaway's request to amend their pleadings. Generally, "[o]nce an amended pleading is interposed, the original pleading no longer performs any function in the case." *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) (quoting 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1476 at 556–57, 559 (1990)). If later developments in the case have removed the legs on which the order under review stands, it is our duty as an appellate court to vacate the order and remand. See *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950).

The way in which this rule applies to preliminary injunctions, however, depends on what the injunction covers: it might affect the entire basis of the lawsuit, or it might affect only some of the claims or involve limited measures needed to preserve the status quo pending final resolution of the case. Review of the latter type of injunction normally leaves the underlying dispute undisturbed.

In order to avoid mootness, there must be a live controversy in which the parties can obtain some relief from the court. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Practically speaking, the question for us in this case is what might be gained by either party from our review of the challenged order. If either factual developments or procedural steps in the district court have left us with nothing meaningful to do, then we must dismiss the appeal as moot. See *Honig v. Students of Cal. Sch. for the Blind*, 471 U.S. 148, 149 (1985) ("No order of this Court could affect the parties' rights with respect to the injunction we are called upon to review.").

Either type of change—factual or procedural—can render an appeal from a grant or denial of a preliminary injunction moot. For examples of cases in which the facts changed, see *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 991 (7th Cir. 2000) (denial of preliminary injunction mooted by graduation from school); *Henco, Inc. v. Brown*, 904 F.2d 11, 13 (7th Cir. 1990) (preliminary injunction moot because injunction's end date passed while appeal was pending). The factual developments in those cases erased the controversy because the remedies originally ordered and under review by the court of appeals no longer had any effect.

Similarly, procedural developments can moot an appeal from a preliminary injunction. The easiest example of this

occurs when the district court makes a final decision on the merits while the interlocutory appeal is pending. See, *e.g.,* *Garner v. Dreyer*, 94 F. App'x 366 (7th Cir. 2004) (citing *United States v. Estevez*, 852 F.2d 239, 241 n.3 (7th Cir. 1988)). In such a case, the interim phase of the case is over and so there is nothing left to do or say about it. The proper course of action then is to recognize that the interlocutory appeal is moot. That often occurs when the controversy over the preliminary injunction is overtaken by the entry of a permanent injunction. The rulings effectively "merge," and so the earlier preliminary injunction no longer has any effect. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 317 (1999). In some instances, however, an appeal can outlive its injunction. Our review of a dissolved preliminary injunction may continue if a party is seeking damages from the improper issuance of the injunction. *N. Indiana Pub. Serv. Co. v. Carbon Cnty. Coal Co.*, 799 F.2d 265, 268 (7th Cir. 1986).

In this case, after the district court indicated that it was granting a preliminary injunction, there were later procedural changes (the revised pleadings) that we must examine to see if they affected the substantive basis for the district court's order. A quick look reveals that the new pleadings did no more than to add Tactical Fleet to the list of parties; they had no effect on Auto Driveaway's basic grievance. The preliminary injunction is still in place, and it is still constraining the actions of Corbett and his companies. Real-world consequences would attend anything we were to do with it, whether affirmance, modification, or dissolution. That is the definition of a live controversy. We note as well that preliminary injunctions by their nature are not set in stone. If circumstances change, the parties are always free to return to the district court to ask for changes.

B

Corbett next argues that the preliminary injunction strayed beyond the scope of the original complaint. He finds fault in Auto Driveaway's failures to name Tactical Fleet in its complaint, to assert claims against him personally, and to include post-termination breaches of contract. These quibbles, however, ignore the fact that the federal courts require notice pleading, not fact pleading complete with all the minutiae. A complaint need only provide notice of a plausible claim; there is no rule requiring parties to plead legal theories or elements of a case. See generally *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). We are unpersuaded by Corbett's attempt to portray the complaint as presenting anything other than allegations of breach of contract and trademark infringement on the part of Corbett and his companies. Corbett was certainly on notice that this lawsuit challenged the practices that Auto Driveaway believed infringed on its business and good name. Any failure to include the specifics Corbett identifies does not offend the requirements of Federal Rule of Civil Procedure 8(a)(2). We see nothing covered by the preliminary injunction that went beyond the case or controversy before the court or that could have surprised Corbett. We note as well that Auto Driveaway could not have been expected to know facts that Corbett was deliberately keeping from it.

C

Though the injunction falls within the scope of the complaint and has not been rendered moot by subsequent proceedings in the district court, it suffers from a different problem: failure to comply with Federal Rule of Civil Procedure 65(d). That rule requires that "[e]very order granting an

injunction … must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." We interpret Rule 65(d)(1)(C) to require that an injunction must be embodied in a standalone separate document. *BankDirect Capital Finance, LLC v. Capital Premium Financing, Inc.*, 912 F.3d 1054, 1057 (7th Cir. 2019), citing *Gunn v. Univ. Comm. to End the War*, 399 U.S. 383 (1970). While many injunctions are accompanied by separate opinions that explain the district court's reasoning, Rule 65(d) requires that the injunction itself contain enough information to render its scope clear. See *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 527 (7th Cir. 1988). "A judicial opinion is not itself an order to act or desist; it is a statement of reasons supporting the judgment." *Id.* If the opinion purports to award declaratory relief, but the judgment does not, then the opinion is reduced to dictum. *Id.*

In this case, the district court issued a single order, styled as a "PRELIMINARY INJUNCTION ORDER," which contained the court's analysis and ended this way (after eight pages of explanation):

> For these reasons, this Court orders that:
>
> For the pendency of this litigation, until no later than September 30, 2020, defendants Auto Driveaway Richmond, LLC and Jeffrey Corbett are prohibited from engaging, directly or indirectly, as an owner, operator, or in any managerial capacity, in any 'for-hire' motor carrier businesses operating as either a common carrier or a contract carrier or any business which operates or grants franchises or licenses to others to operate a business that provides similar services and/or

products as those offered by Auto Driveaway Franchise Systems, LLC at or within a fifty mile radius of AD Richmond's former offices or any other territory with an Auto Driveaway office other than as an authorized franchise owner of another Auto Driveaway office.

Because defendants are likely to incur some costs in ensuring compliance with this injunction and because it provides for a lengthy term, the risk of a wrongful injunction must be secured by Auto Driveaway. Plaintiff, through counsel Greensfelder, Hemker & Gale, P.C., shall deposit with the Court ten thousand dollars ($10,000.00), either cash, check, cashiers' check, certified funds, or surety bond, as security to be held in the Court Registry. The $1,000 used to secure the earlier TRO may be applied toward the balance due for this preliminary injunction.

Plaintiff's motion for a temporary restraining order and preliminary injunction, [55], is granted in part, denied in part.

Like the order in *BankDirect*, this order says that it is an injunction. It reads like an injunction. But it is not a standalone separate document that spells out within its four corners exactly what the enjoined parties must or must not do. It therefore does not comply with Rule 65(d). The question is thus what consequences, if any, flow from that noncompliance.

Our initial question is whether the failure to comply with Rule 65 affects our appellate jurisdiction under 28 U.S.C. § 1292(a)(1). In the past, we have sometimes intimated that a failure to comply with Rule 65(d) at least has the potential of

depriving us of appellate jurisdiction. The logic is this: "there is no standing to seek relief in the form of an appellate judgment" from an order that "places the parties under no obligations." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 320 (7th Cir. 1995); *Original Great Am. Chocolate Chip Cookie Co.*, 970 F.2d at 276. ("An injunction that has no binding force at all simply cannot be appealed."). Along those lines, we have said that "by reason of not complying with Rule 65(d) the order issued by the district court is not an injunction at all, it places the defendant under no obligations; and an order that is not actually or at least potentially coercive … does not impose the sort of tangible harm that Article III requires for standing to seek judicial relief, including relief in the form of an appellate judgment." *Chicago & N. W. Transp. Co. v. Ry. Labor Executives' Ass'n*, 908 F.2d 144, 149 (7th Cir. 1990).

But a closer look at our cases reveals that we have not adopted a rigid rule rejecting jurisdiction in every case in which Rule 65 is violated. Instead, we have said that "whether a purported injunction is appealable" depends on "whether it is in sufficient though not exact compliance with Rule 65(d) [such] that a violation could be punished by contempt or some other sanction." *Id.* at 276. In other words, we may review those injunctions that contain enough content to permit effective enforcement. For example, in *Chicago & North Western Transportation Company*, we held that we had jurisdiction to review a "Memorandum Opinion *and Order*" since it was a "technical rather than substantial" violation of Rule 65(d). 908 F.2d at 150 (emphasis in original). But when injunctions fail that specificity test, we have said that "*by virtue of the failure to comply with Rule 65(d)*, there is no injunction, and we lack jurisdiction to hear [the] appeal." *Reich*, 64 F.3d at 320 (emphasis added).

The Supreme Court has confirmed that compliance with Rule 65 and appellate jurisdiction are two different things, and that what matters for jurisdiction is the practical effect of the order. It has discussed both appellate jurisdiction and compliance with Rule 65(d) in a number of cases. One of the earliest was *Gunn v. University Committee to End War in Viet Nam*, 399 U.S. 383 (1970), in which the Court found that it did not have jurisdiction under 28 U.S.C. § 1253 to review an order from a three-judge district court holding that the parties were entitled to injunctive relief but not ordering any relief. *Id.* at 389–90. It analyzed Rule 65(d) and section 1253 and acknowledged that both were concerned with clarity, but then it added the following in a footnote:

> This is not to suggest that lack of specificity in an injunctive order would alone deprive the Court of jurisdiction under § 1253. But the absence of any semblance of effort by the District Court to comply with Rule 65(d) makes clear that the court did not think that its per curiam opinion itself constituted an order granting an injunction.

*Id.* at 389 n.4. This suggests a simple rule of "no relief, no injunction."

An example of an order that sufficed for appellate jurisdiction appears in *Schmidt v. Lessard*, 414 U.S. 473 (1974). The purported injunction at issue in *Schmidt* was similar to the one in *Gunn*, but it differed in a critical respect. As the Court put it, "[s]ince the opinion of the District Court by its own terms authorizes the granting of injunctive relief … the judgment here is sufficient to invoke our jurisdiction under 28 U.S.C. § 1253." *Id.* at 475. The Court then held that "although the order below is sufficient to invoke our appellate jurisdiction, it

plainly does not satisfy the important requirements of Rule 65(d)." *Id.* at 477.

The Court's most recent word on the subject appears in *Abbott v. Perez*, 138 S. Ct. 2305 (2018). There it reiterated that appellate jurisdiction and compliance with Rule 65 are different requirements, which call for different inquiries. It did so in the context of an appeal from a three-judge district court under 28 U.S.C. § 1253, rather than the more common interlocutory appeal under 28 U.S.C. § 1292(a)(1). Importantly for our purposes, it stated that these are "textually interlocked" statutes, with the "same purpose" and "nearly identical" "relevant language." *Perez*, 138 S. Ct. at 2320. The rules of construction and tests for the two, it confirmed, are the same. *Id*. *Perez* thus puts to rest whatever doubt anyone may have retained about the applicability of *Gunn* and *Schmidt* to appellate jurisdiction under section 1292(a)(1). *Cf. BankDirect*, 912 F.3d at 1058 (asking whether Section 1253 and Section 1292(a)(1) operate similarly with respect to appellate jurisdiction over an order that does not comply with Rule 65(d)).

The *Perez* Court began its analysis of the purported injunction with its jurisdiction, stating that:

> § 1253 must be strictly construed. But it also must be sensibly construed, and here the District Court's orders, for all intents and purposes, constituted injunctions barring the State from conducting this year's elections pursuant to a statute enacted by the Legislature. Unless that statute is unconstitutional, this would seriously and irreparably harm the State, and only an interlocutory appeal can protect that State interest. As a result, § 1253 provides jurisdiction.

*Perez*, 138 S. Ct. at 2324 (citation omitted).

After confirming that it had jurisdiction, the Court turned to Rule 65(d). The Court recalled that "as explained in *Gunn v. University Comm. to End War in Viet Nam*, 399 U.S. 383, 389, n. 4 (1970), [it had] never suggested that a failure to meet the specificity requirements of Rule 65(d) would 'deprive the Court of jurisdiction under § 1253.'" *Id.* at 2321. Furthermore, it emphasized that conflating the two doctrines would deprive an appellate court of jurisdiction to review an order that violates Rule 65(d). Such a result, it said, would defeat the purpose of both the rule and appellate review:

> A contrary holding would be perverse. Rule 65(d) protects the party against which an injunction is issued by requiring clear notice as to what that party must do or refrain from doing. Where a vague injunction does not comply with Rule 65(d), the aggrieved party has a particularly strong need for appellate review. It would be odd to hold that there can be no appeal in such a circumstance.
>
> For these reasons, we hold that we have jurisdiction under § 1253 to hear an appeal from an order that has the same practical effect as one granting or denying an injunction.

*Id*. The "practical effects" test is in keeping with several important interests: (1) the purpose of appellate review to relieve parties of harmful erroneous orders; (2) the limits of standing generally to injured persons, and (3) the command to construe section 1292(a)(1) narrowly such that the court of appeals will review only those orders in need of immediate attention. See

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287–88 (1988); *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981).

The order in our case, as we already have pointed out, had the practical effect of an injunction on the parties, despite the district court's failure to comply with the letter of Rule 65(d). Missing only the self-contained document that is required (a glitch that went unremarked by any of the parties), the district court's order prevented Corbett from operating his business. It also required Auto Driveaway to secure that order with a $10,000 bond. See Rule 65(c). This is ample for purposes of appellate jurisdiction; there is thus no need to remand this case to cure the Rule 65(d) defect.

### III

All that remains is for us to decide whether the district court abused its discretion when it entered the preliminary injunction. See *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 664 (2004). Although we confess to having some misgivings about this injunction, for the most part we conclude that it passes muster. The Supreme Court has held that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). (We have considered Corbett's remaining arguments, but none has merit.)

The district court should have said more about at least two things. True, it found that Auto Driveaway was likely to succeed on the merits on several key points: the enforceability of the restrictive covenants in the agreement; the existence of an

implied-in-fact contract; and breach of such a contract. The court also found that harm to consumer goodwill and loss of customer relationships—both of which Auto Driveaway claims—are irreparable harms. It further concluded that the harm to Corbett and his companies from the preliminary injunction was "minimal." But it did not explain why a remedy at law—that is, an award of damages at the conclusion of the lawsuit—was inadequate. See *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Perhaps Corbett would not be able to pay any ultimate damages, but perhaps he can do so easily: it is impossible to say on this record.

We also do not know why the district court chose such a modest amount, $10,000, for Auto Driveaway to pay to protect Corbett against the harm he will incur during the pendency of the litigation, should he prevail at the end. When setting the amount of security, we have instructed district courts to "err on the high side." *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir.), *opinion amended on denial of reh'g*, 209 F.3d 1032 (7th Cir. 2000). In the second amended complaint, Auto Driveaway mentions that Corbett spent approximately $85,000 just on the development of software for InnovAuto. The $10,000 amount does not come close to securing even that potential loss for Corbett, not to mention his other predictable losses from being barred from the business. In contrast to the inexplicably low bond amount, the injunction itself is a sweeping one. It forbids Corbett and AD Richmond "from engaging, directly or indirectly, as an owner, operator, or in any managerial capacity, in any 'for-hire' motor carrier businesses operating as either a common carrier or a contract carrier or any business which operates or grants franchises or license to others to operate a business that provides similar services and/or products as those offered by Auto Driveaway

Franchise Systems, LLC at or within a fifty mile radius of AD Richmond's former offices or any other territory with an Auto Driveaway office … ." The vague reference to "any other territory with an Auto Driveaway office" raises the potential of a geographic scope far broader than one limited to Corbett's Richmond operation, or the three locations he owned. Again, perhaps that is justifiable, but the scope of the injunction is directly related to the amount of the security required.

Accordingly, we AFFIRM the order of the district court insofar as it preliminarily enjoins Corbett and AD Richmond from operating as a franchisee or de facto franchisee of Auto Driveaway, and insofar as it prohibits them from using any of the contested technology, apps, or trademarks. On remand, the district court should address the question whether to increase the security bond imposed on Auto Driveaway. Because the district court is better suited than this court to consider the question of the adequacy of legal relief in the form of damages as a full substitute for the injunction, we leave that matter undisturbed. Corbett and AD Richmond may, if they wish, ask the district court to reconsider that argument.

SO ORDERED.