In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 25-1126 & 26-1017

JACQUELINE STEVENS,

*Plaintiff-Appellee,*

*v.*

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,

*Defendant-Appellant.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 22 C 5072 — **Matthew F. Kennelly**, *Judge.*

_____

ARGUED DECEMBER 12, 2025 — DECIDED JUNE 22, 2026

_____

Before EASTERBROOK, JACKSON-AKIWUMI, and LEE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Jacqueline Stevens, a professor at Northwestern University, asked for the files of three named immigration detainees under the Freedom of Information Act (FOIA), 5 U.S.C. §552. An agency has 20 days to respond, §552(a)(6). In 2022, after a year had passed without much progress, Stevens filed this suit seeking release of the documents. (Technically she made three requests, one per

alien, and a different amount of time passed after each; to simplify exposition we treat all requests as one.)

The district judge eventually directed the agency to review every month at least 1,500 documents of the more than 13,500 that it estimated were within the scope of her request. 666 F. Supp. 3d 734, 749 (N.D. Ill. 2023). That did not go smoothly.

By 2024 some documents had been released, and the judge demanded details about why the search for and release of others had fallen behind. The agency explained which file systems it had searched, using what search terms, and the judge found both the search and the explanation wanting with respect to the aliens' grievances while in custody, their commissary accounts, and their participation in work programs. He ordered the agency to conduct further searches and provide an improved explanation for its choices. 2025 U.S. Dist. LEXIS 8613 (N.D. Ill. Jan. 16, 2025) at *12–28.

By the time the judge entered this order, the agency had asserted that some or all pages of many documents are shielded from disclosure by one of the exemptions in §552(b). It produced a *Vaughn* index (named after *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)) detailing the redactions in more than 2,000 pages and the reasons for each. It soon admitted that the index was flawed and submitted another. The district judge was unimpressed.

Many entries in the index are effectively unreasoned. One example, which the judge gives at *29–30, explains that a particular document has been withheld under a named exemption for a stated reason, then disclaims reliance on that exemption and invokes a different exemption "without saying anything further" (*id*. at *30)—in other words, without providing any support for the asserted exemption.

One entry that did give a reason sent the judge up the wall. The agency had redacted some information on the authority of §552(b)(6), which speaks of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy". The three aliens have waived any confidentiality in information about themselves. The redacted information is (evidently) an attorney's name and address in the final page of a brief filed on one alien's behalf. As the judge observed, the brief is a public record; more, the names and addresses of attorneys involved in litigation appear not only in briefs but also in the court's docket, which likewise is public. The judge marveled at the assertion that information already available to the public, and designed from the start to be available, can come within §552(b)(6). He called this assertion of exemption "egregious" and "ludicrous" (*id.* at *30) and inferred that the agency and its lawyers were acting in bad faith.

The judge also concluded that Fernando Pineiro Jr., the Freedom of Information Act Director at the agency, who signed the *Vaughn* index and several affidavits, must not have given these documents the attention they require. The judge observed that the *Vaughn* index has four columns, while Pineiro asserted that it has five (and purported to describe which information is in which of the five columns). Pineiro attested that he had performed a line-by-line review of the index, to which the judge replied: "given the inaccuracy of Pineiro's statement describing the organization of the *Vaughn* index itself, why should this Court believe that actually was done?" (*id.* at *32–33).

Having denigrated the agency's asserted exemptions, the judge then ordered all of the more than 2,000 pages produced without redactions. *Id.* at 34. The judge stated that he did not have the time or the patience to review the documents himself

and decide which information is exempt under the statute. He directed the agency to release the lot in full, while it got back to work searching for other documents and providing explanations for what it had elected (or omitted) to search.

The agency immediately appealed, though the district court had not entered a final decision under Fed. R. Civ. P. 58. The case is ongoing, so the decision is not "final" for the purpose of 28 U.S.C. §1291. The jurisdictional statement in the agency's brief tells us that release orders under §552 are injunctive in nature, so that 28 U.S.C. §1292(a) supplies appellate jurisdiction. At oral argument we asked the parties where we could find the injunction—for Fed. R. Civ. P. 65(d)(1)(C) requires injunctions to "describe in reasonable detail … the act or acts restrained or required." Those commands belong in a separate document; narration in an opinion does not suffice. See, e.g., *MillerCoors LLC v. Anheuser-Busch Cos.*, 940 F.3d 922, 923 (7th Cir. 2019). The parties told us, however, that the district court had neglected to enter an injunction.

We suggested that the parties return to the district court and urge the judge to enter an injunction complying with Rule 65. The judge then entered an injunction, and the agency filed a second appeal, which we have consolidated with the first.

Unfortunately, the injunction does not comply with Rule 65(d)(1)(C), because instead of specifying what must be released it refers to "all records identified as responsive to Plaintiff's FOIA requests in full without redactions." Identified as responsive? Meaning? Identified by whom, and when? The agency has furnished multiple lists, which have changed over time; counsel for Stevens has provided other lists of documents that she deems responsive.

If the court is to hold anyone in contempt for noncompliance, it must do better than this. Naming a particular list, of a

given date, might suffice; maybe "every document on the second *Vaughn* index" would have worked; but the actual language is too vague to be enforceable.

Still, although vague language in an injunction is a reason to vacate an order, see *Schmidt v. Lessard*, 414 U.S. 473 (1974), it does not deprive the appellate court of jurisdiction. *Auto Driveaway Franchise Systems, LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 677 (7th Cir. 2019). Contrast *Gunn v. University Committee to End the War in Viet Nam*, 399 U.S. 383 (1970) (complete lack of an injunction is a jurisdictional problem).

The agency does not now take issue with the district judge's findings about the agency's mismanagement of both Stevens's requests and the litigation itself. Instead the agency contends that it did not act in bad faith and that a judge can't simply refuse to implement statutory exemptions. Appellate counsel for the agency understands the district judge's frustration—the members of this panel do too—but the agency insists that a statute remains binding and must be enforced.

Based on this record, it is not clear to us that the agency has acted in bad faith. It has certainly fouled up, but it is an old maxim that one should never attribute to malice something that can be explained by incompetence. Take the proposal to redact the attorney's name and address. Once you see that the document in question is already in the public domain, this looks mischievous (particularly given the numerous other irregularities the district court identified). But it is quite possible that the vetting of this and other documents was done by clerical staff under orders to delete personally identifying information, such as Social Security numbers and home addresses. Clerical staff may miss the significance of the underlying document (a legal brief), and given the thousands of documents that the agency located it is unclear whether top

managers were able to provide the supervision the work required. The district judge declared that he is too busy for that kind of work; it's an understandable reaction, but Pineiro, the head of all FOIA work at a large agency, is busy too. Given the thousands of documents involved here, errors—even howlers—are inevitable and without more may not be indicative of bad faith.

What can be said for the district judge's approach is that, at some point, the cavalcade of errors becomes so long that it is necessary to question whether the agency has taken its job seriously. We shall assume from here on that the district judge did not abuse his discretion in holding that the agency's performance had hit nadir. That justifies sanctions. But which sanctions? The district judge assumed that "release everything" is an appropriate sanction, but he did not explain why.

The problem is not simply that the sanction appears to dishonor exemptions in the Freedom of Information Act. All litigation sanctions can be described as dishonoring rules of law. If the plaintiff accuses the defendant of a tort, and the defendant fails to meet discovery deadlines, an order requiring the defendant to pay up could be described as a violation of the law of torts—for the judge's order does not rest on a finding that the defendant was negligent. Yet such an order is authorized by Fed. R. Civ. P. 37(b)(2)(A)(v), (vi). Imputing the misfeasance (or nonfeasance) of an attorney or other agent to the client, and resolving a suit while bypassing the merits, is common in litigation.

Although sanctions, including default judgments, can be appropriate responses to misfeasance, a judge should take care that any injury ultimately falls on the party responsible. So, for example, if the error of a lawyer or accountant leads to the late filing of a tax return, the taxpayer is responsible for

both interest and penalties, but the agents who caused the delay may be liable in turn to the taxpayer. *United States v. Boyle*, 469 U.S. 241 (1985). Even if it turns out that a malpractice action against the responsible agent fails (on the merits or because the agent is judgment-proof), at least only the person who chose the agent will suffer.

That is not, however, the way the sanction works in this case. The miscreants are employees of the agency, and perhaps some of the agency's lawyers who did not make sure that the client agency handled the situation well. But the penalty may be felt more widely. The agency's appellate brief asserts, without contradiction by Stevens, that the documents in question contain not only Social Security numbers (and other identifying information) but also codes that would enable readers to obtain access to law enforcement databases that hold a trove of confidential information (potentially the identities of informants, details of charges never made public because prosecutors deemed them unsubstantiated, and so on).

Some of the information in these records is covered by privileges (such as the deliberative-process privilege) that the agency, as holder of the privilege, is free to waive. But none of the holders of Social Security numbers has waived the right to confidentiality or done anything that could justify exposure to identity theft. To put this otherwise, revealing Social Security numbers is not a *remedy* for misconduct by an agency's employees or the agency's lawyers. None of the law-enforcement agencies has taken a step that warrants opening investigative files. Private persons may lack a legal right to block an agency from deliberately disclosing confidential information, see *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979), but they certainly have an interest in avoiding loss from an agency's negligence, coupled with a judge's unwillingness to review

documents to see which asserted redactions serve to protect the interests of unconsenting parties.

The district judge did not explain why he selected a remedy that exposed innocent third parties (and law-enforcement bodies outside the defendant agency) to loss caused by the agency's mishandling of this litigation. Nor did the judge explain why he declined to send the documents to a magistrate judge or special master for review, when the judge himself lacked the time to do the job. These omissions leave the sanctions order as an abuse of discretion. Perhaps more could be said that would justify imposing losses (potentially substantial) on persons who did not choose the agency as guardian of their interests and lack any ability to control its litigation strategy—but if there is something to be said along these lines, the district judge did not say it.

This case needs another look in the district court. The injunction is vacated as not adequately detailed, and the case is remanded with instructions to reassess the sanction and limit the disclosures to information concerning the agency's own operations (and privileges that the agency is free to waive).